Good afternoon. May it please the court, Becky James on behalf of the defendants and appellants Francisco Quintana and Bradley Jurgensen. The issue in this case is whether the defendants, a warden and associate warden at the time, are entitled to qualified immunity where the plaintiff was provided accommodations for his disability. My understanding of what's really going on in the briefing in this case is that you are and essentially saying that we should not, we should disbelieve everything that Mr. Thomas said. Is that? I mean, he was self-serving because he doesn't have any evidence other than what he said. No, I would disagree with that, Your Honor, because I think that even if you look at what he has said, and particularly when you look at the documentary evidence in the case of the history. Well, the documentary evidence. I mean, he says there was no, what do you call it, the rails. What? The rails. Rails outside the shower for some period of time. And you say, well, there must have been because we don't have any documentary evidence that it was added. Well, he says there wasn't. So that's the evidence we have to take, right? Well, I think that one of the key points here is that he says the allegations that he makes and what the district court rely on are as to what, you know, his position about the rails. Obviously, yes, the defendants here dispute that, and the documentary evidence supports it. Supports their position. However... And therefore what? I'm sorry? And therefore what at this stage of the... Well, because what's missing there is any indication that, and this is true for pretty much all of Mr. Thomas' claims, any indication that the defendants in this case were aware of the deficiencies and were aware that there was any medical necessity that was not being met. In fact, what you saw in the responses at the time... But he was complaining all along, no? Not really with respect to the rails. The rails did not come up. Well, he... His first complaint... To me, it looks like the record does show some questions of fact as to the adequacy of the accommodations, because there was one rail, if I recall correctly, in the shower, but he needed, because he was in the wheelchair and there was a step, he needed a rail outside of the shower in order to create a safer situation. He needed a trapeze or some type of a grab bar in order to comfortably transfer in and out of bed, and there was, by the toilet, a lack of railing for a substantial period of time. Why aren't those questions of fact as to the adequacy of the accommodations? Well, again, though, I think that even assuming, if we assume Mr. Thomas is correct that those rails were not there, the absence in the record is that Defendants Quintana or Jergensen were aware that there was an inadequacy, that this was creating a substantial risk of serious harm. At the first time... Was he not... Were they not aware that he had fallen? But he had fallen in a previous cell. He had not fallen in this cell. There were no... Was he specific in his request to be transferred to another facility that could better accommodate his disabilities? He was not specific. He repeatedly requested a transfer, but he said, you know, I'm just not... They're not... This isn't an adequate facility. So his first complaint in November of 2009 did not say anything about an absence of rails. It asked for his back brace and his wheelchair cushion... He says that he fell when he was in cell 137 three different times. While he was in cell 137. You said it was before, but he says he fell while he was in 137. You said it was a different cell that he fell in, and I think my colleague is suggesting that the record, at least through his own testimony, is that he fell in the cell 137 or the one that's at issue. Right. I'll have to... I'll double check. Well, I can read it to you, okay, so you can be on the same page. As with cell 137, 144, cell 137 did not have any rails around the toilet. Due to the lack of any toilet rails, I fell while in cell 137 on at least three occasions, further injuring my back and leg, and was in severe pain. So let's agree that's what he said. Right. And the point is, there's no evidence that he made that report, that Quintana or Jergensen were aware of that, and there is no evidence of a report of any fall in cell 137. There were reports of falls in different cells, in a cell beforehand. And, in fact, that's what precipitated the move to this cell. He had raised a complaint about the rails. He had had injuries in a prior cell, and one of the accommodations that they made was to move him into this cell. I repeatedly told defendant Jergensen that I had fallen several times in cell 137 due to the lack of toilet rails, and that I injured myself and was in a great deal of pain as a result. It would be helpful if you read the record. Okay? That's what he said. No, I understand that, Your Honor. But you just told me there was no indication that they knew it, and he just said he told them. Well, okay. Your Honor, I guess to get back to the evidence in the case of what the documentation of what had happened at that time, so I apologize. I mean, that's what I was referring to, the documentary evidence at the time. Okay. But that's so now I'm going back to where I began. You're relying on your own reading of your own evidence. But if you at least shouldn't give me a reason why I shouldn't be relying on his version and his declaration for present purposes, then I don't see how your version is relevant. So if I can follow up on my colleague's question, the issue that we're struggling with, or at least that I'm struggling with, is, okay, we have different versions here. Why isn't that a question of fact? You may have the better version, because you can what he says. But nonetheless, when he says, I complained to the defendants about this, and nothing ever happened, doesn't that defeat the qualified immunity? Isn't that a question of fact for the jury? Well, and I guess this is where we do have to get into the notion of the jury. Can you answer yes or no to my question, and then you can explain, please. Okay. No. The question is, and I think that's because there is a doctrine that, you know, a plaintiff cannot defeat summary judgment simply by putting the conclusory self-serving allegation against them. But that's not true. I mean, what he's saying is, is recipient witness testimony about, I did this, and I saw that, that is sufficient evidence. Do you disagree with that? No, unless, I don't disagree with that in general. And what makes it self-serving? All evidence is self-serving, or you wouldn't put it in. Of course. I think the issue becomes, is it conclusory, or is there enough factual basis for it to be something more than, I'm just going to state the allegations that will make my case for me. And I think what we have here is him saying, I told these people, and they didn't do it. Right, that's what we have, his statement that he told them. Is there anything in the document, anything in the grievances that he filed, that would reflect that he complained about cell conditions? Not until the March of 2010, and that's in his, I think it's his letter to the Director Lappin, when that's the first time that he says, and I think this is March 28th, or 45 to 48, where this is the first time he says that there were no handicapped rails, or there were no rails around, and even then he's kind of vague. He says there are no handicaps in the unit, but, and he's requesting a transfer at that point. He also says in his own testimony, though, that, so this is March 28th, in April of 2010, so very shortly after that, they did install the rails. Now, again, there's a dispute about that, but even assuming his version is true, that they did, in fact, install those rails in April, that doesn't reflect deliberate indifference, because in March, he's raised this, and in April, they fixed it. Throughout this time, Warden Quintana, in his responses, reflected his understanding, and this is, this is, his understanding was reflected in his responses, that the accommodations were adequate. And as to the medical supplies, I'm running out of time, but just very quickly, as to medical supplies, he was told, specifically, as was Juergensen, that these, that the requests that he was making were not medically necessary. And on that basis, they, they simply cannot be considered to be deliberately indifferent to his needs. And that's for the back brace and the cushion? The back brace and the cushion and the trapeze, right. But, but not the rails, including the rail by the bed. The rails really were never, never presented as an issue of medical necessity. I mean, there was not a, there was, because there was never a denial of the rails, right. I mean, whenever, he was never told, you can't have rails. So, you know, what we see is, is, you know, an absence of a discussion about that. So your position is that he first asked for the rails in March of 2010, and 30 days later in April, he got the rails? Yes. By his own testimony, he had the rails, yes. Yes. Do you have a record site that you're relying on that he asked for the rails for the first time in March of 2010? The, the site for that is SCR 45. 4548. Yes. And my, in my review of the prior, the prior administrative complaints that precede that in pages SCR 37 to 48, that's, that's out his administrative complaints. And if you look at the prior complaints at SCR 37, it's his first complaint in November. This also says that, when he told him that he needed the rails, he said, Ed and Jurgensen told me that he would not allow the proper rails to be installed in cell 137. Okay, I understand that you think this is self-serving, but he said it. Right. Well, but, but they were. I mean, by, and again, by his own, by his own statements, the rails, the rails were put in. Well, eventually. Quintana was denying that, or that he believed that the accommodations were inadequate. And, and Jurgensen does say it in his own. Ultimately, because Quintana and Jurgensen wouldn't do this, he's personally spoken with Robert McFadden, the regional director, and sent Mr. Lappen a letter on March 28th, 2010, regarding the same issues. And that was then forwarded, and finally they inspected his cell, and they gave him the rails. That's his version of events. Right. After he was told they wouldn't have. Right. And I think, even taking that as, as true, what we have to come back to in this case is, were they deliberate, were, were either of these defendants deliberately indifferent to a substantial risk of serious harm? And to answer that question, you know, we have to look at, were they aware, did they, did they subjectively understand the substantial risk of serious harm if he did not have the accommodations that he was requesting? They had no medical evidence. They had no evidence of injuries. They had no, nothing but his own request. Okay. You've used your time, and I'll give you a minute to rebuttal. Thank you. Thank you. Go for it. Thank you, Your Honor, and may it please the Court. The defendant's entire position rests on accepting all of their own witnesses' facts as true, and both Your best evidence of deliberate indifference is declaration? Yes. Where in the declaration does it state the timing of when he alerted either defendant to the fact that he needed additional rails put in the cell? It does not specifically say when he alerted each individual defendant. So what counsel is arguing is that the first time that they were really put on notice, that the rails and the accommodations were inadequate, and additional rails needed to be added to the cell was March 2010, and then the rails were installed a few days later in April. What in the record contradicts that? So, first of all, prior to his transfer to cell 137, he was in cell 144. He wrote a letter to Warden Holinchek about that and asked to be transferred from cell 144 to another cell because cell 144 wasn't a handicapped cell. And how long did that transfer take? What period of time elapsed between the request and the transfer? He was transferred on or about that day, the day that he made the request. So that transfer request wasn't specifically made to the defendants, but the defendants were supervising this facility, and Mr. Thomas in particular. So I would submit that that initial transfer request should have put the defendants on notice that this is a disabled inmate. And bear in mind, he's obviously disabled. He has a leg. Right. So that's not a question. He's disabled. He's entitled to a cell with accommodations. This cell had some accommodations. The question in this case is the adequacy of the accommodations, right? That's absolutely right. So when were they first alerted to the fact that, well, now I've gotten my transfer to cell 137, the accommodations are still insufficient. And here are the ways in which the accommodations are insufficient. Well, there's not an exact date on that. But Mr. Thomas does say that he complained to Mr. Juergensen at least 15 times. He is complaining more or less constantly. And while he doesn't have a ---- Where does he say that? Complaining about what to? So in paragraph 23 of his declaration, that's ER 162, at the top of the page, he says, I spoke with Defendant Juergensen on at least 15 different occasions to alert him of the issues with my cell and the need for my medical equipment that Dr. Fernandez had ordered for me. So I would read that as he is complaining more or less about everything. Well, Dr. Fernandez wasn't ordering handrails in the shower or ---- That's true. But Dr. Fernandez was ordering a ---- So I take it by your answer, you cannot point me in the record to anything that contradicts what your opponent just told us. That is, that the first time that the record reflects he specifically complained about, if you will, the shower conditions, the cell conditions, with respect to the handrails, would be March of 2010. Yes? No? If no, please give me a cite. So to use Your Honor's language, there is nothing in the record that contradicts what the defendants just said. But I would say there are the fact that he talked to the ---- that he's testifying. Well, my understanding is that from what I read before, you told him repeatedly that he'd fallen several times due to the lack of the shower rails. And despite this, and despite he looked on several occasions, he could see they weren't there, but he said he wouldn't do it. And then ultimately, in March of 2018, he wrote a letter to somebody else, not to Jervison. So, I mean, it's at least a fair implication that there was a substantial period of elapsed time. That's exactly what I was going to say, Your Honor, that there ---- Even though we don't know when the first one started. Correct, Your Honor. Although nothing in his declaration expressly contradicts what the defendants just said, there is ample evidence that he began complaining before the March 2010 date. Just based on the number of complaints that he indicated, he expressed a defendant. It leads to the backward inference that the complaints must have been over a period of time. So it's not just one day complaining 15 times and then writing a letter and then the transfer. Is that right, that you're relying on the inferences based on the number of complaints? That's correct. Do we have dates for those 15 times? Or are they within a two-week period? Are they over a three-month period? What's the period of time of these? What's the general? I mean, without ---- What can I grab ahold of? So Mr. Thomas is transferred to Cell 137 in August of 2009. And in March of 2010 is when he submits the letter to someone else. So over the span of that, of those several months, Mr. Thomas is complaining constantly. He was transferred to Cell 137 because his prior accommodations were in action. Didn't he also complain about other things that he said never were fixed? Correct. He complained that the ---- The outside shower rails, the shower grab bars, and the grab bar above his head. Correct. And the grab bar about his head is important because that is something that Dr. Fernandez did order him. And the court ---- So on that, it isn't so clear that he complained to Jergesen. But he does say clearly that he complained to Jergesen about the lack of proper shower rails. And he says that was never fixed. Yes. He also mentions that he was complaining about the medical devices that were taken away from him and never returned when he was first transferred to the SHU slightly earlier in August of 2009. And those medical devices included his back brace, which Dr. Fernandez ordered for him, his wheelchair cushion, which Dr. Fernandez ordered for him. And while Dr. Fernandez had requested a trapeze, none was ultimately ever provided. But in his prior accommodations, a grab bar was installed above his bed, which he could use sort of like a trapeze. And in addition to this, he's trying his best to use an equivalent of a trapeze by tying together some strips of sheets that he's torn and socks. But it keeps breaking and he keeps falling and hurting his back. Well, there's also some dispute in the record about whether a trapeze or a grab bar was medically necessary. There seem to be some contradictions on that point. Yes, so Dr. Fernandez, in his initial 770 form... Both sides can rely on Dr. Fernandez. Well, that's true, although I think their reliance on Dr. Fernandez is a little bit problematic because they point to his later filed declarations in which he says, for the first time, everything I said in those 770 forms was just what Mr. Thomas told me. But that's not clear at all from the face of those 770 forms. In those 770 forms, Mr. Thomas is saying that Victorville, as an institution, cannot provide for Mr. Thomas' needs, that they do not have the trapeze that he requires. That's the language that Dr. Fernandez uses in those transfers. But they had reasons, they said, for not giving him the trapeze, as I understand it. But more than that, in this whole discussion about what he told whom to about what, he never says directly that I can see. He spoke to Jerkinson about the trapeze or about the alternative of a rail for the bed. So that's true, and that's not in his declaration. But I would direct the court to the district court's decision on the motion for reconsideration, where the court notes that there were at least two medical records reflecting Dr. Fernandez's recommendation for a trapeze. Well, that's true, but, again, we have the deliberate indifference problem. We have to know that somebody read them and decided not to do it, and that's what's missing with regard to the bed issue, no? Well, I'm sorry, with regard to the bed issue, are you referring to the trapeze? Yes, the trapeze and or, as I understand it, an alternative would have been a rail by the bed, but there is no indication that it was in the medical records, but there's no indication that Thomas or Quintana knew that and nonetheless refused to give it to him. Well, I would argue that precisely the opposite, Your Honor, because the defendants, in trying to exclude the 77 forms at trial, argued that the defendants didn't see these because they weren't in the medical records, which I think strongly suggests that they did see everything that were actually in the prisoner's medical records. So the fact that there are, in his medical file, documents specifically recommending a trapeze is at least some evidence sufficient to overcome summary judgment that they were aware of this need and nonetheless disregarded it. I would also point the Court to Mr. Thomas's declaration at paragraph 25. This is ER 162, where Mr. Thomas relates what Mr. Defendant Juergensen said. Among other things, he says, I'm not going to allow you to have the wheelchair cushion. I'm not going to put rails in your cell. I'm not going to give you the trapeze. So it doesn't make sense for Defendant Juergensen to be saying he's not going to give him the trapeze if Mr. Thomas isn't asking for that. So I'd say I'm almost out of time. If the Court has no further questions, I'll submit. Thank you. Thank you. You made your rebuttal. Thank you. So if you could address the argument where he concedes that maybe there may not be something before March, but clearly he made a number of complaints and therefore that had to have occurred over a period of time. Why isn't that fair? Well, it is entirely imprecise in the declaration when he supposedly made those complaints. And again, the documentary evidence suggests there was nothing known about that prior to that. Certainly beyond Associate Warden Juergensen, there's no indication also as to Cantana that he was informed that there was anything wrong with the cell. In the declaration on page ER-161, paragraph 21, Mr. Thomas says that he spoke with Defendant Francisco Cantana and just says vaguely on three occasions to alert him of the issues with my cell, but imprecise to say what he told him. And again, in the contemporaneous records, Cantana's responses reflect his understanding that the accommodations were adequate, that the cell was adequate. He may have been mistaken, but that's exactly the purpose of qualified immunity, is to give some breathing room. If he was mistaken, well, that doesn't mean... If he was mistaken about what, I'm sorry? I mean, if he was in fact mistaken and there were not adequate rails, but he had no knowledge of that, he's still entitled to qualified immunity. And so what's missing here is the knowledge, so just focusing on Cantana for a moment, that the rails were not adequate. None of the administrative complaints raise that. You think that the result might be different with regard to the two defendants? Well, I mean, that's up to the court. I think it should be the same with respect to both because there really is no indication even with Jurgensen that he was... Also, I think we have to remember, and this is undisputed as well, he was actually not the decision-maker. He was one of... He was not the one to decide really whether the rails would be put in. He also consulted with others, with medical staff. There's also no indication that the reason for his statements were to deprive him, deprive Mr. Thomas of necessary medical care versus his understanding that the requests that he was making were not medically necessary. But it wasn't Jurgensen's decision. Whose decision was it? Cantana? We have the wrong defendants or what? Well, he was certainly... He was an associate warden. I mean, Cantana certainly had some authority over this. Others didn't. Now, the transfer, neither one of them had any authority to do, and that's not even an issue here. As to the rails being made, accommodations being made to his cell, I think it would be fair to say that Defendant Cantana would have had some authority over that, but Defendant Jurgensen did not. And he was relying as well, both with respect to the adequacy of the accommodations in the cell and the requests made for equipment, he was relying on the health services officer, what he had been told by the prior warden as to what he could do. So that was... Did you argue in your brief what you're arguing now, i.e., that the problem was that they didn't have sufficient information about this as opposed to that, in fact, he had adequate accommodations? Yes, Your Honor, and we did address the subjective prong. The subjective prong, and that is the subjective prong of the deliberate indifference standard. And we do emphasize that. I think that that's an important point in this case, is that there is a subjective element, not only do the accommodations have to be medically, in fact, medically inadequate, which they were not here, but also the defendants have to have subjectively known of the substantial risk of serious harm. So I'd just like the Court to come back to that standard in evaluating this case. Were they actually on notice of a substantial risk of serious harm and did they... If you're in a wheelchair and you don't have handrails in the shower, do we need anything more than that? No, there were handrails in the shower. And the defendant, I mean, excuse me, the plaintiff acknowledges that. It's not outside the shower. Not outside the shower. Right. And so the question becomes were there adequate rails? Were there, you know, was it enough? Were there rails that, you know, that should have, you know, were there more rails required? Clearly, the shower was handicapped excessively. It was the shower had rails inside, and there's no dispute about that. I'm not sure the Court has any other questions. Thank you very much. Thank you, Your Honor. The case of Thomas v. Quintana is submitted. We will go on to von Bruneth v. and Gehring v. Hurwitz.
judges: Berzon, Nguyen, Zouhary